**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WILLIE J. GRIFFIN, JR.,** | : |
| | : |
| Petitioner | : |
| | : CIVIL NO. 3:CV-07-2239 |
| v. | : |
| | : (Judge Caputo) |
| **WARDEN MR. EBBERT,** | : |
| | : |
| Respondent | : |

**M E M O R A N D U M**

## I.   Introduction

While housed at the Allenwood United States Penitentiary (USP-Allenwood), in White Deer, Pennsylvania, Willie J. Griffin, Jr., filed the above captioned petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  In his Petition, Mr. Griffin seeks the restoration of his good time conduct.  Specifically, Mr. Griffin asserts that prison officials violated his due process rights by subjecting him to an untimely hearing before the Unit Disciplinary Committee (UDC) and because he never received a copy of the Disciplinary Hearing Officer's (DHO) final report explaining the evidence relied upon and reasons for the disciplinary action. (Doc. 1, Pet.)  He claims that the lack of receipt of the DHO's report thwarted his ability to seek administrative review of the DHO's findings and sanctions. (*Id*.)  As relief, Mr. Griffin seeks the expungement of the incident report and sanctions, and the restoration of his good conduct time. (*Id*.)

For the reasons that follow, the Petition will be denied.

**II.      Procedural History and Background**

   **A.     Procedural History**

Mr. Griffin initiated this federal habeas petition pursuant to 28 U.S.C. § 2241 in 2007 while housed at USP Allenwood, in White Deer, Pennsylvania, alleging the denial of due process in connection with his loss of good time credits for an incident that occurred at FCI Fort Dix.  (Doc. 1, Pet.)  At some point prior to this Court's resolution of his Petition, Mr. Griffin was transferred to FCI-Sandstone in Minnesota which is located outside the jurisdiction of the Middle District of Pennsylvania.  The government in its response addressed the merits of Mr. Griffin's Petition and argued in that alternative that it should be transferred to the District of Minnesota where Mr. Griffin was incarcerated.  (Doc. 15, Resp. to Pet.)  On January 30, 2009, the Court dismissed the petition, without prejudice, due to lack of jurisdiction and without addressing the merits.  (Doc. 18, Order.)  Mr. Griffin appealed that decision to the United States District Court of Appeals for the Third Circuit.  (Doc. 26, Notice of Appeal.)  The Third Circuit Court of Appeals vacated this Court's order and remanded the matter with instructions that the matter be transferred to the United States Court for the District of Minnesota.  (Doc. 29, *Griffin v. Ebbert*, C.A. No. 09-2058 (3d Cir. Nov. 5, 2009)(unpublished)).

On August 10, 2010, the case was transferred to the United States District Court of Minnesota.  (Doc. 30, Order.)  However, nine days prior the action being filed in the District of Minnesota, Mr. Griffin was transferred to a federal prison in Marion, Illinois.  *Griffin v. Ebbert*, Civ. No. 10-3425, 2011 WL 2533835 (D. Minn. Jun. 1, 2011).  Mr. Griffin remained there until August 18, 2011, when he was

transferred to FCI-Yazoo City in Mississippi.  (*Id.*)  On June 27, 2011, the United States District Court of Minnesota transferred the case to the United States District Court for the Southern District of Mississippi.  *Griffin v. Ebbert*, Civ. No. 10-3425, 2011 WL 2533857 (D. Minn. Jun. 27, 2011).

On August 4, 2011, the District Court in Mississippi held that it did not have jurisdiction over the matter because the jurisdiction of the Middle District of Pennsylvania attached upon Mr. Griffin filing his Petition while confined here.  (Doc. 31, *Griffin v. Ebbert*, 751 F.3d 288 (5th Cir. 2014)).  As a result, Mr. Griffin's Petition was dismissed for lack of jurisdiction.  Mr. Griffin appealed.  (*Id.*)  This unresolved habeas petition has now come home to roost.  On May 23, 2014, the United States Court of Appeals for the Fifth Circuit vacated the District Court in Mississippi's dismissal order and directed the case be transfer back to this Court for resolution.  (*Id.*)

As the matter was ripe at the time it was originally transferred by this Court, no further briefing is required by the parties.

### B.    Relevant Background

Mr. Griffin was housed at FCI-Fort Dix from April 10, 2002 through February 16, 2007.[1]  (Doc. 15-2, Ex. A, McCluskey Decl. at ¶ 4.)  His projected release date is March 12, 2017, via good conduct time (GCT) release.  (*See id.*, ECF p. 10.)

---

[1] Mr. Griffin was housed at FCI-Fort Dix from April 10, 2002 through February 16, 2007.  He was housed at FCI-Allenwood from February 20, 2007 through May 8, 2007.  (*Id.*, ECF p. 4 and pp. 7-8.)

-3-

On December 7, 2006, while housed at FCI-Fort Dix, Mr. Griffin was issued Incident Report No. 1542489 charging him with violating Bureau of Prisons (BOP) Disciplinary Code 108, possession, manufacture or introduction of a hazardous tool. (*Id.*, ECF p. 12.)  Counselor W.T. Biederbeck reported that at approximately 10:50 a.m. he was walking through Mr. Griffin's housing unit checking sanitation. (*Id.*)  Counselor Biederbeck entered room 236 and then ordered everyone out.  He pat searched each inmate as they left the room. (*Id.*)  While checking Mr. Griffin's bed, a small Cingular 64K smartchip, or sim card, was found. (*Id.*)  Upon searching the mattress, a Cingular Motorola cell phone was also found. (*Id.*)  A copy of the incident report was delivered to Mr. Griffin on December 7, 2006.

Mr. Griffin's hearing before the UDC was delayed while the Federal Bureau of Investigation (FBI) considered whether to pursue criminal charges against him. *See* BOP Program Statement 5270.07; *Inmate Discipline*, 28 C.F.R. ¶ 541.14(b)(1). On January 8, 2007, the FBI declined prosecution and released the incident back to FCI-Fort Dix staff for investigation. (Doc. 15-2, ECF p. 15.)  On January 9, 2007, per BOP policy, Unit Manager Herbik requested, and received, an extension of time to hold Mr. Griffin's hearing more than five working days after the FBI completed its investigation. (*Id.*)

On January 17, 2007, Mr. Griffin appeared before the UDC.  Mr. Griffin was advised of his rights and indicated he understood them.  At the UDC hearing he made the following statement, "The phone was found in my bed, however the phone is not mine." (*Id.*, ECF p. 13.)  Due to the seriousness of the offense, and because

the possible sanctions for the alleged violation were greater than the UDC could impose, the UDC referred the charges to the DHO for further hearing.  (*Id.*, ECF p. 12.)  Mr. Griffin then received a copy of the "Notice of Discipline Hearing Before the (DHO)" form and a copy of the "Inmate Rights at Discipline Hearing" form.  (*Id.*, ECF pp. 17 - 18.)

Mr. Griffin's DHO hearing was held on January 29, 2007.  (*Id.*, ECF p. 20.)  The DHO read Mr. Griffin his rights, and Mr. Griffin indicated that he understood them.  He waived his right to a staff representative.  (*Id.*)  Mr. Griffin did request an inmate witness whom the DHO did not call because the "[w]itness could not testify to any pertinent information.  He was there when the (sic) found the cell phone in the inmates mattress."  (*Id.*, ECF p. 21.)  Mr. Griffin made the following statement at the hearing:  "He stated he found a chip under my blanket.  I do not know what he was doing.  I think Reginald Green planted the cell.  I don't have a problem with him.  I got a letter from him since I had been here.  I think this guy in my room that morning could have done it.  I do not have funds in my account nor do I know which staff were doing cell phones."  (*Id.,* ECF p. 20.)

In addition to the Incident Report and Investigation, the DHO considered the following documentary evidence: (1) an October 4, 2006, Memorandum by Warden C.E. Samuels; (2) two December 7, 2006, Memoranda by Counselor Biederbeck with the names of other inmates redacted; and (3) a picture of a Motorola cell phone

and sim card.[2]  (*Id.*, ECF p. 21 and pp. 24-25.)  Counselor Biederbeck's first memorandum relayed information received from another inmate specific to Mr. Griffin.  (*Id.*, ECF p. 24.)  The inmate informant stated that Mr. Griffin had a cell phone and offered to get him one for "1,200.00" and the assistance of a staff member who was working "in 5812".  (*Id.*, ECF p. 24.)  Counselor Biederbeck's second memorandum recounts his conversation with two inmates who reported an "unidentified inmate in 5812," who was "dealing straight through a staff member," offered to sell them a cell phone for $1200.  (*Id.*, ECF p. 25.)  One of the informants was to meet with the inmate from 5812 that night "to look at the two phones that he currently has and also to get the address and account number were (sic) to send the money."  (*Id.*)

After considering the evidence before him, and Mr. Griffin's statement, the DHO found that Mr. Griffin had committed the act as charged.  (*Id.*, ECF p. 21.)  The DHO specifically based his decision on evidence provided in Counselor Biederbeck's report that he found a Cingular Motorola cell phone and smart card hidden within Mr. Griffin's bed.  (*Id.*)  He also considered the memoranda submitted by Counselor Biederbeck indicating that Mr. Griffin had offered other inmates "a cell phone for $1200 and that he was dealing strait (sic) through a staff member."  (*Id.*)  As for Mr. Griffin's statements, the DHO found them specious "as there are many ways to have funds used or sent through other people and not sent directly to you.

---

[2] Although Respondents submit copies of Counselor Biederback's Memoranda (Doc. 15-2, ECF pp. 24 - 25), a copy of Warden Samuel's Memorandum was not submitted for the court's review.

The DHO has reviewed your past history of phone abuse as a reason you may be involved with cell phones." (*Id*., ECF p. 22.)  The DHO imposed multiple sanctions against Mr. Griffin: (1) 60 days disciplinary segregation; (2) disallowance of 40 days Good Conduct Time; (3) the forfeiture of 40 days Non-Vested Good Conduct Time; and (4) the loss of telephone privileges for 18 months (commencing 01-29-2007 and ending 07-28-2008).  (*Id*., ECF p. 22.)  "The petitioner was aware of the sanctions because he was told by the DHO of the sanctions and of the fact that the DHO would not give the petitioner a disciplinary transfer." (Doc. 16, Traverse, ECF p. 4.)

The DHO's Report was published February 8, 2007, but does not reflect when, if ever, it was delivered to Mr. Griffin.  (Doc. 12, ECF p. 22.)

### III.     Standard of Review

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974); *Burns v. PA Dept. of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011).  Because federal inmates have a protected liberty interest in good-time credit, it cannot be taken without minimum procedural due process protection.  *Denny v. Schultz*, 708 F.3d 140, 143-44 (3d Cir. 2013).

A challenge to a disciplinary action that resulted in the loss of good time credit is actionable under § 2241 because it affects the duration of the petitioner's sentence.  *Queen v. Miner*, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

## IV. Discussion

Mr. Griffin alleges that the disciplinary hearing process was constitutionally flawed, in violation of his due process rights, because: (1) his hearing before the UDC was untimely; and (2) he never received a copy of the DHO's report which stifled his ability to exhaust his administrative remedies or otherwise challenge the validity of the DHO's decision. He also claims he was improperly and "involuntarily transferred" to a new, higher security facility on February 15, 2007, following the cell phone incident.[3] (Doc. 1, Pet.)

### A. Exhaustion

"In general, inmates must exhaust administrative remedies before proceeding on a habeas petition brought under § 2241." *Pinet v. Holt*, 316 F. App'x 169, 171 (3d Cir. 2009) (per curiam) (*citing Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996)). Failure to satisfy the BOP's procedural rules for administrative review can result in a procedural default, which will bar § 2241 review of a defaulted claim unless the prisoner can show "cause and prejudice." *Id.* at 760 - 61.

Without conceding the issue of Mr. Griffin's exhaustion of his administrative remedies, Respondent does "not argue that the Petition should be dismissed for failure to exhaust administrative remedies." (Doc. 15, Resp. to Pet., ECF p. 3, fn. 2.) Accordingly, the court will address the merits of Mr. Griffin's Petition.

---

[3] Mr. Griffin's transfer was not a disciplinary sanction imposed by the DHO.

### B.     Procedural Due Process

Respondent argues that the Petition should be dismissed because Mr. Griffin has failed to demonstrate a violation of his due process rights incident to the disciplinary hearing which resulted in the loss of good time credits.  The Court agrees.  Although Mr. Griffin cites several instances where the BOP did not follow their own regulations, he has failed to show he suffered any prejudice as a result of the alleged untimely scheduling of his UDC hearing or late receipt of the DHO's written report.[4]  See *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994)(finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the right sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief); *see also Mancia v. Williamson*, 219 F. App'x 229, 233 (3d Cir. 2007)(it is well established that a "prison's failure to follow its own procedures will not result in a due process violation as long as the inmate is provided with the process he is due under *Wolff*.")

In *Wolff*, the Supreme Court set forth the minimum requirements of procedural due process for prison disciplinary proceedings that may result in the loss of good time credits: (1) an inmate is entitled to written notice of the charges at least 24 hours before he appears for his disciplinary hearing; (2) the prisoner is entitled to a written statement by the fact finder(s) as to the evidence relied on and

---

[4] It is undisputed that Mr. Griffin received a copy of the DHO's report on or about August 18, 2008, as it was included in Respondent's Response to the Petition.  *See* Doc. 15-2, ECF pp. 20-22.  Accordingly, at the latest, Mr. Griffin received a copy of the DHO's report 1 year, 6 months and 10 days following its issuance.

-9-

the reasons for the disciplinary action; (3) the inmate is allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals; (4) the inmate is permitted the assistance of a fellow prisoner, or if that is forbidden, assistance from a staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and (5) the disciplinary hearing must be conducted by an impartial fact finder. *Id*. at 563-76, 94 S.Ct. at 2978-2984.

Additionally, due process also requires that the DHO's decision be supported by "some evidence in the record." *Denny,* 708 F.3d at 144 (quoting *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). The "some evidence" standard is minimal and does not require a reviewing court to examine the entire record, make independent assessment of the credibility of witnesses, or a re-weighing of the evidence. *Pappas v. Allenwood*, 548 F. App'x 31, 33 (3d Cir. 2013)(citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56, 105 S.Ct. at 2774.

The BOP has specific guidelines for inmate disciplinary procedures which are codified at 28 C.F.R. § 541.2 *et seq.*, and entitled, *Inmate Discipline and Special Housing Units*. These procedures are intended to meet or exceed the due process

-10-

requirements prescribed by *Wolff*, 418 U.S. 539, 94 S.Ct. 2963.  *See Von Kahl*, 855 F.Supp. at 1418.

Pursuant to the 2007 regulations, staff shall prepare an Incident Report when there is a reasonable belief that a violation of regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful.  28 C.F.R. § 541.14(a) (2007).  When it appears likely that the incident may be subject to criminal investigation, staff may not question the inmate until the FBI or other investigative agency completes it investigation or otherwise advises staff questioning may occur.  28 C.F.R. § 541.14(b)(1) (2007).  The incident is then referred to the UDC for initial hearing pursuant to 28 C.F.R. 541.15 (2007).  The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement of the incident" and this time period does not include the initial day staff learns of the incident, weekends or holidays.  *See* 28 C.F.R. 541.15(b) (2007).  This period may be extended for good cause shown by either the inmate or staff.  *See* 28 C.F.R. 541.15(k) (2007).  If the UDC finds that the inmate has committed a prohibited act, it may impose minor sanctions.  If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing.  *See*  28 C.F.R. 541.15(h) (2007).

DHO hearing procedures are set forth at 28 C.F.R. § 541.17 (2007).  These procedures require the following: (a) 24–hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, 28

C.F.R. § 541.17(a) (2007); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, 28 C.F.R. § 541.17(b) (2007); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, 28 C.F.R. § 541.17(c) (2007); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, 28 C.F.R. § 541.17(d) (2007). The DHO's decision "shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence." 28 C.F.R. § 541.17(f) (2007). The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions. 28 C.F.R. § 541.17(g) (2007). A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days. *Id.*

An inmate may appeal the DHO's decision via the BOP's Administrative Remedy Procedures. *See* 28 C.F.R. § 541.19 (2007). When filing an appeal, the "inmate should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate." (*Id.*)

In the instant case, Mr. Griffin was given advance written notice, via the Incident Report, that he was being charged with the possession of contraband, a cell phone and sim card. He received the Incident Report on December 6, 2006, clearly

-12-

more than 24-hours in advance of his UDC or DHO hearing. (Doc. 15-2, ECF p. 12.) Per BOP regulations, Mr. Griffin's UDC hearing was delayed pending the FBI's determination of whether criminal charges would be filed. Once the FBI declined prosecution of Mr. Griffin, BOP officials received an extension of time from the Warden to hold Mr. Griffin's UDC hearing. (Doc. 15-2, ECF p. 15.) Mr. Griffin's UDC hearing was then held on Wednesday, January 17, 2007.[5] Contrary to Mr. Griffin's assertion, the BOP followed its procedures and requested that his UDC hearing be held promptly after the FBI released the matter back to the institution. Moreover, even if the BOP failed to obtain an additional extension of time from the Warden to hold his UDC hearing, this procedural failure does not constitute a per se due process violation. See *Mancia*, 219 F. App'x at 233. "[E]ven if the [BOP] regulations were violated, its violation is not actionable. [Petitioner] cannot show that his right to due process was violated by a possible technical non-compliance with the regulation, given that *Wolff* does not require that a UDC hearing take place within three days of an incident ... and where any delay did not prejudice him." *Bullard v. Scism*, 440 F. App'x 232, 235 (3d Cir. 2011)(citing *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994)). Moreover, there is no requirement under *Wolff* for an initial UDC type hearing (which is a creation of BOP regulation), or that a UDC hearing be conducted within a specific time frame. Accordingly, no due process

---

[5] Although Mr. Griffin alleges his UDC hearing was untimely, only nine days transpired between the FBI's release of the incident and Mr. Griffin's UDC hearing. Three of the nine days were weekends or legal holidays (January 13-15) and not work days (*see* 28 C.F.R. § 541.14(b)(1)), thus Mr. Griffin's UDC hearing was held on the sixth working day following the FBI's release of the incident.

violation occurred as a result of the allegedly untimely UDC hearing, especially where, as here, Mr. Griffin failed to demonstrate any harm as a result of the timing of the UDC hearing and there was no finding of guilty, or sanction imposed, as a result of the UDC hearing.

Moving forward to the other *Wolff* requirements, Mr. Griffin does not challenge that he was provided the opportunity of staff representation, to call witnesses and present documentary evidence at his DHO hearing, or that the DHO officer was not impartial. (Doc. 1, Pet.) Rather, he claims he never received a copy of the DHO's report as required by the BOP's regulations and *Wolff*, and thus he suffered a *de facto* due process injury because his ability to file an administrative appeal was frustrated. Respondent acknowledge "that there may have been a delay in delivering the report to Griffin, who was transferred to another institution eight days after the DHO issued his report" because there is not date on the DHO report itself indicating when it was delivered to Mr. Griffin. (Doc. 15, ECF p. 14 and Doc. 15-2, ECF p. 22.) However, Respondent infers that Mr. Griffin "obviously obtained a copy of the report because he is aware of the DHO's conclusions and sanctions imposed." (Doc. 15, ECF p. 14.) The Court disagrees with Respondent as to the obviousness of this conclusion based on the September 14, 2007, statement by Mr. Griffin's Unit Manager at USP-Allenwood that the DHO's February 8, 2007-report does not appear in Mr. Griffin's central file several months after it was issued. (Doc. 1, ECF p. 25.) Respondent does not address this issue in its Response. Based on the record before the Court, there is no evidence to suggest Mr. Griffin received a

copy of the DHO's report prior to filing his habeas petition.[6] Thus, it is only certain that Mr. Griffin received a copy of the DHO's report approximately 18 months after it was issued. Again, while the BOP was not in compliance with its own policies, this failure does not automatically correspond with a due process violation. *See Von Kahl,* 855 F.Supp. at 1421.

More important than whether the BOP adhered to its own regulations is the issue of whether the 18 month delay in Mr. Griffin's receipt of the DHO's report constitutes a due process violation under *Wolff*. Courts confronted by this same question have uniformly held that a delay in receipt of the written report of the reasons good-time credits were revoked following a disciplinary hearing discipline does not rise to the level of a due process violation unless the prisoner can show that the delay prejudiced his ability to defend against the charges or delayed his ability to appeal past his release date. *See*, e.g., *Pinson v. Berkebile*, 528 F. App'x 822, 827 (10th Cir. 2013) ("Despite the three to four year delay in receiving a DHO form, Petitioner is not prejudiced in light of the length of time remaining before his projected release date in 2025. Nothing precludes Petitioner from filing an administrative remedy appeal regarding the" incident reports.); *Deroo v. Holinka*, 373 F. App'x 617, 618-19 (7th Cir. 2010) (dealing with delays of between 3 and 8 years); *Staples v. Chester*, 370 F. App'x 925, 930 (10th Cir. 2010) (holding that the DHO's failure to give an inmate a written copy of its decision within ten days should not entitle an inmate to habeas relief where the delay had no prejudicial effect on an

---

[6] Respondent's August 18, 2008, response included a copy of the DHO report. (Doc. 15-2, ECF p. 20-22.)

administrative appeal; and finding no such prejudice from an eight month delay); *Davis v. Zych*, 2010 WL 5015383 at *3 (E.D. Mich., Dec. 3, 2010) (same for 3 month delay); and *Cook v. Warden, Fort Dix Corr. Inst.*, 241 Fed. Appx. 828, 829 (3d Cir. 2007) (same).

      Here, even if Mr. Griffin did not receive a hard copy of the DHO's report until August 18, 2008, he has failed to allege any harm or prejudice as a result of this delay. First, as previously noted, 28 C.F.R. §541.19 (2007), allows an inmate to proceed through the appeal process without a written DHO report as long as he states the date of the DHO hearing and the nature of the charges against him. Mr. Griffin took advantage of that opportunity and filed an administrative appeal, even without receipt of the DHO report. Second, the fact that Petitioner's administrative appeals were denied as untimely or improperly filed does not demonstrate any prejudice as he is not barred from seeking judicial review of the matter based on his alleged failure to exhaust his administrative remedies. As such, Mr. Griffin has not demonstrated any harm as a result of the 18 month delay in his receipt of the DHO report. Accordingly, Mr. Griffin has not suffered a due process violation due to the BOP's non-compliance to its own disciplinary procedures or his delayed receipt of the DHO's report.

### C. Sufficiency of Evidence

In the underlying proceeding, Mr. Griffin was found guilty of possessing a hazardous tool, a cell phone. As noted earlier, this Court does not conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence presented before the DHO. *Hill*, 472 U.S. at 455–56, 105 S.Ct. at 2774. The Court's task is limited to determining whether there is *any* evidence in the record, even if circumstantial and/or meager to support the conclusion that Mr. Griffin was guilty of the crime charged, possession of a cell phone. *See Id*. at 457, 105 S.Ct. at 2775. In this instance, Mr. Griffin does not dispute that the cell phone was found in his bunk. Rather, he argues that another inmate "planted" the cell phone in his bunk. (Doc. 15-2, ECF p. 21.) However, the undisputed fact is that a cell phone was found hidden inside a hole in Mr. Griffin's mattress and a sim card in his bedding. This fact alone satisfies the "some evidence" standard by application of the presumption of constructive possession doctrine. *See Solomon v. Warden, FCI Fairton*, 506 F. App'x 147, 149 (3d Cir. 2012) ("In the absence of direct evidence indicating an inmate's guilt of possession, the 'some evidence' standard may be satisfied by application of the constructive possession doctrine in limited circumstances where a small number of inmates are potentially guilty of the offense charged."). Additionally, at least one inmate informant's identified Mr. Griffin by name as someone who offered to sell him a cell phone for $1200.00. As a result of this information, his area was searched and the contraband found. Although Mr. Griffin argues that some of the information provided by the inmate informants was

inaccurate (wrong housing unit, and that the officer who was prosecuted for smuggling cell phones into the prison did not meet the physical description given by the informant), he does not deny that at least one inmate identified him by name as the individual who offered to sell him a cell phone prior to the cell phone being found in his bed. (Doc. 16, Pet.'s Reply, ECF p. 3.) Accordingly, there is sufficient evidence to support the DHO's finding that Mr. Griffin was in possession of a hazardous tool as charged.

There is no basis to expunge the incident report and sanctions imposed by the DHO because Mr. Griffin has not proven that he was denied procedural due process or that there was insufficient evidence to support the disciplinary finding.

### D. Mr. Griffin's Non-Disciplinary Transfer.

Mr. Griffin's claim that he was transferred to a different facility with a higher security classification, which was not part of the DHO's disciplinary sanction, cannot be litigated in a habeas petition.

Once a prisoner is sentenced, he is by law "committed to the custody of the [BOP]." 18 U.S.C. § 3621(a). Federal law gives the BOP, not this Court, the authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). "It is well established that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 2027, 153 L.Ed.2d 47 (2002). An inmate does not have a due process right to remain in or be transferred to any particular prison. *See Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). Thus, to the extent Mr. Griffin

seeks to prevent his transfer, it is not cognizable as a habeas matter, and further, he has no liberty interest in being housed in any particular BOP facility during his incarceration.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:   July 11, 2014**